Beth K. Findsen (023205)
LAW OFFICES OF BETH K. FINDSEN, PLLC
7279 East Adobe Drive, Suite D-120
Scottsdale, AZ 85255
(480) 584-6664
beth@findsenlaw.com
*Attorney for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

PAUL P. FOGGE and DOLORES M. FOGGE,

Plaintiffs,

vs.

RUSHMORE LOAN MANAGEMENT SERVICES, LLC, WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, AS TRUSTEE FOR BCAT 2014-9TT, SHELLPOINT MORTGAGE SERVICING, LLC, BANK OF AMERICA, N.A., JOHN AND JANE DOES 1-1000, XYZ CORPORATIONS 1-15; ABC LIMITED LIABILITY COMPANIES 1-15

Defendants.

No. 16-CV-_____

**ORIGINAL COMPLAINT**

1. False Recordings, A. R. S. §33-420;
2. Breach of Contract;
3. Breach of Covenant of Good Faith and Fair Dealing;
4. Real Estate Settlement Procedures Act, 12 U.S.C. §2605
5. Fair Debt Collection Practices Act, 15 U.S.C. §1692

**JURY TRIAL DEMANDED**

COMES NOW, Plaintiffs, PAUL P. FOGGE and DOLORES M. FOGGE (hereinafter "Plaintiffs" or "Fogges") for their Complaint and allege:

## PARTIES, JURISDICTION, AND VENUE

1.     This court has jurisdiction pursuant to 28 U.S.C. §1331 because there are questions arising under federal law: (1) Truth in Lending Act (15 U.S.C. §1639, and Reg. Z); (2) Real Estate Settlement Procedures Act (12 U.S.C. §2602(1) and §2605(i)(2)); and (3) Fair Debt Collection Practices Act (15 U.S.C. §1692).  This court has supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. §1367.

2.     Plaintiffs, PAUL P. FOGGE and DOLORES M. FOGGE own certain real

property in Pinal County, with the common address of 5234 E. Roundup St.; Apache Junction, AZ 85119, and the legal description of the subject Property (the "Property") being:

> THE WEST HALF OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 13, TOWNSHIP 1 NORTH, RANGE 8 EAST OF THE GILA AND SALT RIVER BASE AND MERIDIAN, PINAL COUNTY, ARIZONA

3.     Plaintiffs hold a Warranty Deed to the Property, recorded as an official record of the Pinal County Recorder.

4.     Plaintiffs reside at the Property in Pinal County, Arizona and have resided there at all relevant times as their primary residence.

5.     This Court has the authority to exercise personal jurisdiction over Defendants in this action because they transacted business, including the transactions at issue, within the state of Arizona.

6.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) as the events or omissions took place in Pinal County, Arizona, and the property which is the subject of this action is located in Pinal County, Arizona.

7.     This suit relates to a refinanced home loan on the Property and a Deed of Trust dated December 26, 2007, recorded in the office of the Pinal County Recorder on December 31, 2007 as #2007-141215, naming "Countrywide Bank, FSB" as the purported Lender. **[Exhibit A].**

8.     Defendant RUSHMORE LOAN MANAGEMENT SERVICES LLC ("Rushmore") is a limited liability company organized and existing under the laws of Delaware with its principal place of business in Wilmington, Delaware.  In 2015 to the present, Rushmore has caused acts to occur in Pinal County, Arizona, as related to the Deed of Trust.

9.      Defendant Rushmore was and is a person within the meaning of RESPA at 12 U.S.C. § 2602(5) at all times relevant to the allegations therein.

10.     Defendant Rushmore acted as a loan servicer of the Plaintiffs' mortgage loan within the meaning of RESPA at 12 U.S.C. §§ 2605(i)(2) and 2602(1), at all times relevant to the allegations therein.

11.     Defendant Rushmore is a "debt collector" within the meaning of the Fair Debt Collection Practice Act (hereinafter, "FDCPA"), as defined at 15 U.S.C. §1692a(6).

12.     Defendant WILMINGTON SAVINGS FUND SOCIETY, FSB, d/b/a CHRISTIANA TRUST, not in its individual capacity but solely as legal title Trustee for BCAT 2014-9TT ("Wilmington/Christiana, as Trustee for BCAT 2014-9TT,") claimed that Bank of America, N.A. had transferred its interest in the "claim" to the subject loan, and filed a Notice of Transfer of Claim Other Than for Security with the Bankruptcy Court on January 12, 2015 in *In re Fogge*, No. 4:10-bk-10805-BMW, (Bankr. D. Ariz.)(Doc. 80).

13.     Wilmington/Christiana, as Trustee for BCAT 2014-9TT is federal savings bank acting as a trustee for a foreign statutory trust established for the primary purpose of acquiring defaulted mortgage debts owed by consumers in Arizona and elsewhere. Because BCAT Trust 2014—9TT only intends to acquire defaulted, consumer debts for the primary purpose of commencing property acquisition by foreclosure, deeds in lieu, and short sales from various assigners, it qualifies as a debt collector and a collection agency under Arizona law. BCAT Trust 2014-9TT is nothing more than an account. BCAT 2014-9TT does not have any employees and does not operate like a bank, credit union, or trust company. BCAT 2014-9TT is not exempt from the licensure requirements for collection agencies in the State of Arizona.

14.     Defendant SHELLPOINT   MORTGAGE   SERVICING,   LLC

-3-

("Shellpoint") is a limited liability company based in Greenville, South Carolina. Shellpoint is alleged to have purchased the servicing rights to the Subject Loan Rushmore on June 2, 2016.  Shellpoint has caused events to occur within the state of Arizona, for example Shellpoint's intention to, and refusal to postpone the unauthorized trustee sale scheduled for August 16, 2016.

15.     Defendant Shellpoint was and is a person within the meaning of RESPA at 12 U.S.C. § 2602(5) at all times relevant to the allegations therein.

16.     Defendant Shellpoint acted as a loan servicer of the Plaintiffs' mortgage loan within the meaning of RESPA at 12 U.S.C. §§ 2605(i)(2) and 2602(1), at all times relevant to the allegations therein.

17.     Defendant Shellpoint is a "debt collector" within the meaning of the Fair Debt Collection Practice Act (hereinafter, "FDCPA"), as defined at 15 U.S.C. §1692a(6).

18.     Defendant BANK OF AMERICA, N.A. is a National Association bank. Defendant Bank of America, National Association claimed to be the former servicer of the subject loan.  At times, BANA held itself out as the beneficiary of the Deed of Trust.  BAC Home Loan Servicing, LP ("BAC"), was a subsidiary of Bank of America and was the previous loan servicer prior to BANA, an affiliated company described above.  On July 1, 2011, BAC Home Loans Servicing, LP claims to have merged with Bank of America, N.A. As a result of the merger, BAC Home Loans Servicing, LP is now known as Bank of America, N.A. successor by merger to BAC Home Loans Servicing, LP. (hereinafter "BANA")

19.     Defendant BANA was and is a person within the meaning of RESPA at 12 U.S.C. § 2602(5) at all times relevant to the allegations therein.

20.     Defendant BANA acted as a loan servicer of the Plaintiffs' mortgage loan within the meaning of RESPA at 12 U.S.C. §§ 2605(i)(2) and 2602(1), at all times relevant to the allegations therein.

21.     Plaintiff is currently unaware of the identity and capacity of XYZ CORPORATIONS 1 through 15, ABC LIMITED LIABILITY COMPANIES 1 through 15, 123 BANKING ASSOCIATIONS 1-15; and DOES 1 through 1000, but will amend the Complaint when their identities have been ascertained. Plaintiffs allege upon information and belief, however, that each and every presently unknown defendant is in some manner responsible for the acts or conduct of other Defendants, or were and/or are responsible for the injuries, damages, and harm incurred by Plaintiffs.

## FACTS AND GENERAL ALLEGATIONS

22.     Plaintiffs refinanced the real Property, their primary residence, on or about December 26, 2007.

23.     The Note originally provided a principal amount of $417,000.00, payable to Countrywide Bank, FSB.  The fixed interest rate was 6.25%.  It was dated December 26, 2007, and specified a monthly payment of $2,567.54, with the first payment due February 1, 2008.   The Deed of Trust and Note identified the "Lender" as "Countrywide Bank, F.S.B." ("Countrywide").

24.     On April 14, 2010, Plaintiffs filed a voluntary petition for Chapter 13 bankruptcy.

25.     The Plaintiffs were not late on their mortgage payments when they filed the bankruptcy.

26.     The Plaintiffs had applied for a loan modification with BAC Home Loan Servicing, LP ("BAC"), holding itself out as servicer for the owner of the subject loan.

27.     BAC and Plaintiffs' lawyers instructed them to make their trial period payments for step one of the Home Affordable Modification Agreement Trial Payment Plan (HAMP TPP) beginning February 2010.  Plaintiffs made all of the HAMP TPP payments and satisfied all conditions precedent, making payments in February 2010, March 2010, April 2010, and May 2010.   These payments were

approved by the bankruptcy court and by BAC Home Loan Servicing, LP ("BAC"), holding itself out as the servicer for the owner of the subject loan.

28.     Bank of America, N.A. ("BANA") filed a Proof of Claim on August 11, 2010, alleging "total debt" as of April 14, 2010 as $420,688.18, and an interest rate of 6.25%.  No. 4:10-bk-10805, (Claim 13-1) It also claimed a "total arrearage" of $17,776.23, admitting that it held $1,472.11 in suspense.  It requested post-petition payments of $3,098.89/month.  Plaintiffs made these payments.

29.     On or about April 20, 2010, Plaintiffs signed the "permanent" Home Affordable Modification Agreement ("HAMP Mod") provided by BAC Home Loans Servicing, LP, holding itself out as the servicer of the "Lender." **Exhibit B.** The HAMP Mod provided that if the Plaintiffs made their payments by the Modification Effective Date of May 1, 2010, the "Loan Documents will automatically become modified on May 1, 2010 and all unpaid late charges that remain unpaid will be waived."  ¶3.

30.     The HAMP Mod terms added to the principal balance (originally $417,000 in December 2007) approximately four thousand dollars and specified the new principal balance would be $421,482.53.  ¶3(B).

31.     The new interest rate would be 2.875% from April 1, 2010 until April 1, 2015.  Then the interest rate would step up in year six to 3.875% for one year.  Finally, for years 7-28, the interest rate would be 4.875%. ¶3(C).

32.     In reality, according to Rushmore, the self-proclaimed successor servicer as of November 1, 2014, "per the prior servicer's payment history, Bank of America did not process the loan modification until May 10, 2011." **Exhibit C** (Rushmore July 14, 2016 Letter).   Thus, BAC/BANA waited ONE YEAR to process the HAMP Mod, although it provided that the "Loan Documents will automatically become modified on May 1, 2010 and all unpaid late charges that remain unpaid will be waived." Exhibit B, ¶3.

33.     Plaintiffs were not told of this breach of the HAMP Mod's terms.

34.     As instructed by counsel, BAC and the court, Plaintiffs made payments to BAC via the Chapter 13 bankruptcy trustee every month, including April 2011, May 2011, June 2011, July 2011, August 2011, and September 2011.  These payments are evidenced receipts, cashier checks, and/or bank statements.

35.     On May 25, 2011, Bank of America, N.A. filed an amended Proof of Claim, alleging a "Principal Balance" of $421,482.53.  *In re Fogge*, No. 4:10-BK-10805-PL-BMW (Bankr. D. Ariz.) (POC 13-2).

36.     After the plan was confirmed, Plaintiffs made the loan payments directly to BANA from September 2012 through October 2014.  Plaintiffs missed no payments.

37.     Plaintiffs' Chapter 13 Plan, confirmed February 27, 2013, also allowed them to pay Bank of America, N.A. outside of the plan.  *In re Fogge*, No. 4:10-BK-10805-PL-BMW (Bankr. D. Ariz.) (Doc. 65).

38.     On June 5, 2014, BAC Home Loan Servicing, LP filed a Notice of Mortgage Payment Change indicating that the new total monthly payment was $2,329.93, as of September 1, 2013. Thus, the notice referenced a "retroactive" payment change.

39.     On August 12, 2014, Bank of America, N.A. filed another Notice of Mortgage Payment Change indicating that the new total monthly payment was $2,367.25, as of October 1, 2014.

40.     By letter dated November 12, 2014, Plaintiffs were informed that servicing "that is, the right to collect payments from you" had transferred to Rushmore but that "[t]he transfer of the servicing of your mortgage does not affect any term or condition of the mortgage instruments, other than the terms directly related to the servicing of your loan."

41.      Plaintiffs scheduled their November 2014 payment to Rushmore by telephone and received a confirmation number of 10078678.

42.     Plaintiffs made payments to Rushmore without event on December 2014, and each month from January 2015-April 2015.

43.     Plaintiffs tried to pay Rushmore in May 2015 and in June 2015. Rushmore representatives would not accept Plaintiffs' payments, claiming that Plaintiffs had been turned over to loss mitigation.

44.     On January 12, 2015, a Transfer of Claim was filed, noting the Transferor was Bank of America, N.A., the Transferee was Wilmington Savings Fund Society, FSB d/b/a Christiana Trust, not in its individual capacity but solely as legal title Trustee for BCAT 2014-9TT ("Wilmington/Christiana as Trustee for BCAT 2014-9TT"). The "claim amount" was still $421,482.53. *In re Fogge*, No. 4:10-BK-10805-PL-BMW (Bankr. D. Ariz.) (Doc. 80).

45.     On February 28, 2015, Wilmington/Christiana as Trustee for BCAT 2014-9TT and Rushmore filed a Notice of Mortgage Payment Change specifying a new total payment of $2,518.03, a "current interest rate" of 2.875%, and a "new interest rate" of 3.875%, pursuant to the step rate loan modification of 2010.

46.     Just prior to Plaintiffs' successful completion of the Chapter 13 Plan and the court's subsequent discharge order, Defendant Wilmington/Christiana as Trustee for BCAT 2014-9TT and Defendant Rushmore filed a last-minute Motion for Relief from Stay upon false claims that Plaintiffs failed to make all post-petition mortgage payments and that "[a] default exists under the Loan for failure to make payments due and owing under the Note and Deed of Trust." *In re Fogge*, No. 4:10-BK-10805-PL-BMW (Bankr. D. Ariz.)(Doc. 86). Along with that false statement, Rushmore furnished other false documentation to the bankruptcy court, amounting to a fraud on the court. *See, e.g.* purported copy of Note bearing endorsement in blank by Laurie Meder stamp, a known robo-signer who worked for ReconTrust. *In re Fogge*, No. 4:10-BK-10805-PL-BMW (Bankr. D. Ariz.) (Doc. 86-1). *Compare* (Claim 13-1 Part 2).

47.     Rushmore has admitted that it was using false amounts in its Motion for Relief, but blames it on BAC/BANA's failure to make the permanent HAMP Mod effective for one year.  **[Exhibit C]**

48.     Plaintiffs successfully completed their Chapter 13 Plan and received a

discharge on June 12, 2015.  *In re Fogge*, No. 4:10-bk-10805, (Bankr. D. Ariz.)(Doc. 104).

49.     Plaintiffs sent Rushmore a completed Loan Modification Application as acknowledged by Rushmore.  [**Exhibit N**].

50.     On January 26, 2016 Rushmore sent the Fogges a purported "Trial Modification Agreement" ("Rushmore Trial Mod").  [**Exhibit D**]

51.     The Rushmore Trial Mod required an "initial payment of $5,434.00" in certified funds in 14 days.  [**Exhibit D**]

52.     Further, the Rushmore Trial Mod incorrectly claimed that there were "unpaid monthly payments from December 1, 2013 through February 1, 2016" in the amount of $65,050.35.  [**Exhibit D**].  This was false.  The Fogges had made their payments throughout the bankruptcy.

53.     Secondly the Rushmore Trial Mod assessed "foreclosure legal fees" of $2,403.48, "late charges" of $609.24, and purported "corporate advances" of $1,302.00. [**Exhibit D**].

54.     The Rushmore Trial Mod also required the initial $5,434.00 and six monthly installments of $3,294.00 as a "first step" to having "the lender extend to Borrower(s) a permanent modification which will fully cure the loan default."  No principal balance is given.  No interest rate is given.  No loan term was given. [**Exhibit D**].

55.     Plaintiffs sent a Notice of Error and Request for Information under RESPA 12 U.S.C. §2605(e) and Notice of Representation under 15. U.S.C. §1692c(a)(2) dated February 12, 2016 and disputed the onerous terms of the Rushmore Trial Mod.  [**Exhibit E**].

56.     Particularly, Plaintiff the Rushmore Trial Mod required payments of $25,198.00 for the illusory promise that Rushmore may, at "Servicer's option," give Plaintiffs a permanent modification after the successful completion of the Trial Mod.

57.     Further, Plaintiffs questioned the legitimacy of the ownership of the

Fogge Note and Deed of Trust by BCAT 2014-9TT, and Rushmore's servicing agreement with same. [**Exhibit E**].

58.    Despite these significant legal questions, Rushmore (not the Lender under paragraph 22 of the Deed of Trust nor the Note Holder) apparently directed Clear Recon to record a Notice of Trustee Sale scheduling the trustee sale of the Property for August 16, 2016. **[Exhibit F].**

59.    Shellpoint has ratified the sale.  Despite notice by written requests under Ariz. Rev. Stat. §33-420 and Ariz. Rev. Stat. §§ 12-1101-1103, no party has revised the recorded documents or cancelled or postponed the upcoming illegal sale. **[Exhibit G]**

### Transfers of Deed of Trust and Recorded Documents

60.    A Deed of Trust dated December 26, 2007, was recorded in the office of the Pinal County Recorder on December 31, 2007 as #2007-141215 (the "Deed of Trust"). [**Exhibit A**].

61.    The Deed of Trust:  (a) requires the Lender to give the Trustor (i.e., the Plaintiffs) 30 days' notice of   default before accelerating the Note balance; (b) requires that the Lender give the Trustee written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, before the Trustee may initiate a sale; (c) imposes a duty on the Lender to release the Deed Of Trust "[u]pon payment of all sums secured by this Security Instrument. . . ."; (d) secures to Lender (not the beneficiary) (i) the repayment of the Loan, and (ii) the performance of borrowers' covenants and agreements under the Deed Of Trust and Note; and (e) states that if applicable law is silent on whether the parties may agree to something by contract, "such silence shall not be construed as a prohibition against agreement by contract.

62.    Arizona's deed of trust statutes define "beneficiary" as "the person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or the person's successor in interest." A.R.S. § 33-801(l). The

person for whose benefit a trust deed is given, is the Lender/Note Holder. [**Exhibit A** at 3 ("This Security Instrument secures to Lender: (i) the repayment of the Loan. . . .")].

63.    The Deed of Trust defines Mortgage Electronic Registration Systems, Inc. ("MERS") as "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns." [**Exhibit A**, at 2(E)]. It then claims MERS is "beneficiary" under the Deed of Trust, but at all times limited by the "acting solely as a nominee for Lender" restriction. Thus, MERS was only a nominee for the Lender under the Deed of Trust solely for the purpose of avoiding recording an assignment of the DOT each time the Loan was purportedly sold/assigned/transferred.

64.    MERS--defined as "solely a nominee" of the original "Lender" (here, designated as Countrywide Bank, F.S.B.)-- was never the true Beneficiary under the Deed of Trust. [**Exhibit A**]. The Deed of Trust designation as "beneficiary" but "solely as nominee" is a mere label, not meaning the same thing as Arizona's statutory definition of "beneficiary." [*Compare* **Exhibit A** *with* A.R.S. §33-801(1)]. MERS does not meet the functional requirements of A.R.S. §33-801(1) for a "beneficiary." The Deed of Trust gives all operative powers to "Lender," not to "MERS" or "beneficiary" or "agent" or to "Loan Servicer." The Deed of Trust uses those terms when it means Loan Servicer, beneficiary, or agent.

65.    In the express language of the Deed of Trust, all covenants and performance rights and obligations run between Lender and Trustor. [**Exhibit A**] The Lender under the Deed of Trust is the functional equivalent of the statutory "beneficiary," not MERS, because it is the Lender who is owed money as the Note Holder of the Note, so it is for the Lender's benefit that the trust deed is given.

66.    MERS has repeatedly testified, and its Membership Rules and governing documents state that MERS is not a lender, not a loan servicer, and MERS does not own Notes or accept payments.

67.     On June 1, 2010, MERS, via Nichole Clavadetscher, "Certifying Oficer," recorded an Assignment of Mortgage dated May 18, 2010 ("First Assignment"), purporting to assign the interest of MERS "solely as nominee for Countrywide Bank, FSB" to BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loan Servicing, LP the "described mortgage, together with certain note(s) described." [**Exhibit H**].   But MERS had no interest in the Note and claimed no interest in the Note.  Any interest it had in the beneficial interest in the Deed of Trust was limited by the narrow scope of MERS' self-described role as "solely as nominee" of Countrywide Bank, FSB.  Countrywide Bank, FSB had no interest in the Deed of Trust on May 18, 2010, because the Note had apparently been endorsed and transferred to another.

68.     On April 7, 2015, Defendants Rushmore and Wilmington/Christiana as Trustee for BCAT 2014-9TT recorded an Assignment of Deed of Trust ("Second Assignment") in which "Assignor" Bank of America, N.A. Successor by Merger to BAC Home Loan Servicing, LP fka Countrywide Home Loans Servicing, L.P. by Rushmore Loan Management Services LLC, Its Appointed Attorney in Fact." [**Exhibit I**] This document contained a stamped signature saying "Johnny Chapa, Assistant Vice President" and a squiggly initial.  It was dated March 12, 2015 and notarized in Orange County, California.  It purported to transfer Bank of America, N.A.'s "beneficial interest under that Deed of Trust" (outside the chain of title) in the Fogge's Deed of Trust to Wilmington Savings Fund Society, FSB, doing business as Christiana Trust, not in its individual capacity but solely as trustee for BCAT 2014-9TT Trust. The Second Assignment was recorded with the Pinal County Recorder as #2015-021326.  [**Exhibit I**].

69.     On April 22, 2015, a third Assignment of Deed of Trust ("Third Assignment") was recorded as #2015-025454 with the Pinal County Recorder. [**Exhibit J**].   The Third Assignment asserted that "for value received" that Bank of America, N.A. Successor by Merger to BAC Home Loans Servicing, LP f/k/a

Countrywide Home Loans Servicing, LP "hereby grants, conveys assigns to "Wilmington Savings Fund Society, FSB, doing business as Christiana Trust, not in its individual capacity but solely as trustee for BCAT 2014-9TT" "all beneficial interest under that certain Deed of Trust" "together with the note or notes therein described and secured thereby, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Mortgage including the right to have reconveyed, in whole or in part, the real property described therein." At the top it stated it was a correction to the Second Assignment, as the word Trust was crossed out and initialed in the conveyance language.  Otherwise, it was signed by Johnny Chapa on the same day as the Second Assignment, March 12, 2015, with the same notarization, and the same squiggle signature.

70.    On April 13, 2016, Defendants Rushmore and Wilmington/Christiana as Trustee for BCAT 2014-9TT caused to be recorded a Substitution of Trustee purporting to substitute a new trustee, Clear Recon Corp.  This document bears Pinal County Recorder #2016-022274.  [**Exhibit K**].   The Substitution of Trustee was signed by Patricia Oliver, purportedly an "Assistant Secretary for Wilmington Savings Fund Society, FSB, doing business as Christiana Trust, not in its individual capacity but solely as trustee for BCAT 2014-9TT by Rushmore Loan Management Services, LLC, it's [sic] Appointed [sic] Attorney in Fact."

71.    On May 12, 2016, a Notice of Trustee's Sale under Deed of Trust ("NOTS") was recorded by Clear Recon, Rushmore, and.  [**Exhibit F**] The NOTS represented that the "current beneficiary" under Plaintiffs' Deed of Trust was Wilmington Savings Fund Society, FSB, doing business as Christiana Trust, not in its individual capacity but solely as trustee for BCAT 2014-9TT.  It gave the "beneficiary's" address "care of" Rushmore.  It was signed by Bernis M. Gonyea of Clear Recon Corp., the "Authorized Signatory for Trustee."  It claimed that Clear Recon's address was in Phoenix but the document was notarized in California.  It was dated May 11, 2016, and recorded as #2016-029984 with the Pinal County

Recorder.   The NOTS claimed the "trust property will be sold, pursuant to the power of Sale under that certain Deed of Trust" on **August 16, 2016** at 12:00 P.M. at the main entrance to the Pinal Superior Court Building.    **[Exhibit F].**

72.    Plaintiffs wrote to notify Rushmore, Christiana for BCAT 2014-9TT, and Shellpoint to request that they remove the false foreclosure recorded documents pursuant to Ariz. Rev. Stat. §33-420.   **[Exhibit G]**. None has done so. The false documents remain recorded against Plaintiffs' Property.

73.    Further Plaintiffs wrote to notify Defendants Rushmore, Christiana for BCAT 2014-9TT, and Shellpoint of the title dispute, and to request a quitclaim deed be executed with a check for $5.00 per Ariz. Rev. Stat. §12-1102.  None has returned a quitclaim. **[Exhibit G]**.

**Servicer Transfers, Misapplied Payments and
Servicer Errors, Malfeasance, and Misrepresentations**

74.    Rushmore wrongfully refused Plaintiffs' payments in November 2014. Rushmore assessed wrongful and unauthorized charges on Plaintiffs despite the error being Rushmore's.

75.    Rushmore also negligently refused to investigate the errors in BANA's accounting for the subject loan when the transfer of servicing occurred.

76.    Plaintiffs were never credited for **SIX MONTHS of payments** they had made directly to the bankruptcy trustee for the loan, even though this was precisely what they had been directed to do by BANA, BAC, their own attorney, and the court.

77.    Indeed, **BANA refused a mortgage payment** made by the bankruptcy trustee to BANA.  On March 1, 2013, the Chapter 13 trustee made a payment of $4,694.23 to BANA, claiming to be the "creditor" in its Proof of Claim, and **BANA returned the payment of $4,694.23 on March 28, 2013**.

78.    Plaintiffs successfully completed their Chapter 13 bankruptcy and received a discharge.  Plaintiffs completed all of their payments to BAC for BANA, then Rushmore, except when Rushmore thwarted performance by refusing payment.

79.    In July 2015, Plaintiffs wrote to Rushmore to notify them of the discrepancies and included proof of payments and the HAMP TPP and HAMP Mod and to provide evidence of payment of the mortgage loan throughout the bankruptcy. **[Exhibit N]**

80.    On November 6, 2015, Rushmore responded and agreed to credit **one payment** that BANA had misapplied but not the thousands of dollars of payments the bankruptcy debtors/Plaintiffs had painstakingly made on April 2011, May 2011, June 2011, July 2011, August 2011, and September 2011 because "the trustee did not forward the funds to Bank of America." **[Exhibit N]**

81.    A review of Rushmore's Payment History and Rushmore's and BAC and BANA's Proofs of Claim revealed that each has regularly and consistently tacked illicit charges to Plaintiffs' loan, in amounts exceeding $10,000.00.  Each alleged servicer ratified and adopted the illicit fees charged. Now, Shellpoint has adopted, ratified, and furthered the fees, after it was purportedly transferred servicing from Rushmore on or about June 2, 2016.

82.    These improperly assessed charges included multiple charges for "title costs," "recording fees," "advertising fees," "attorney fees," "mailing fees," "postponement costs," and "property inspections."

83.    Plaintiffs sent a Notice of Error under the Real Estate Settlement Procedures Act on February 12, 2016.  **[Exhibit E]**.

84.    On or about March 30, 2016, Rushmore sent a deficient response. **[Exhibit L]**

85.    As noted by Plaintiffs in their May 10, 2016 letter regarding the March 30, 2016 Response, Rushmore "failed to produce evidence corroborating that the

Fogge Note/Deed of Trust legally transferred to BCAT 2014-9TT Trust.  You failed to produce the servicing agreement between Rushmore and BCAT 2014-9TT, or any other evidence regarding Rushmore's agency relationship with any principal with ownership rights in the Fogge Loan, or the extent of the authority bestowed on Rushmore by a disclosed principal." **[Exhibit N]**

86.     Further Rushmore "failed to provide an explanation for the copy of the Note filed with the bankruptcy court that included a stamped 'endorsement' by a known robo-signer for ReconTrust, the deed of trust trustee entity affiliated with Bank of America, N.A. As previously noted in my February 12, 2016 Notice of Error and QWR.  *See, e.g.* purported copy of Note bearing endorsement in blank by Laurie Meder stamp, a known robo-signer who worked for ReconTrust.  *In re Fogge*, No. 4:10-BK-10805-PL-BMW (Bankr. D. Ariz.) (Doc. 86-1). *Compare* (Claim 13-1 Part 2).

87.     There was nothing to demonstrate that BCAT 2014-9TT, a foreign statutory trust, owned anything at any point, other than the duplicitous Proofs of Claim filed by attorneys for BANA, Rushmore, and Wilmington/Christiana, as Trustee for BCAT 2014-4TT.  **[Exhibit N].**

88.     Rushmore failed to substantiate the figure specified in its proposed modification of $65,000.00 in unpaid monthly payments. **[Exhibit L].**

89.     Rushmore's Customer Account Activity Statement ("CAAS") and Christiana Trust's and Bank of America's Proofs of Claim revealed that Rushmore and BANA regularly and consistently tacked illicit charges to Plaintiffs' loan, in violation of the express terms of the contractual Note and Deed of Trust, and federal law.  Plaintiffs gave Rushmore an opportunity to explain but it failed to do so. **[Exhibit L].**

90.     For example, the CAAS shows excessive late charges in the amount of $101.54/each assessed on multiple occasions, including July 16, 2015, August 17, 2015, September 16, 2015, October 16, 2015, and December 16, 2015.  Further, there were multiple "attorney advances" assessed during and after the bankruptcy

without explanation or contractual basis, including $405 on February 1, 2016, $850 on June 1, 2015, $75.00 on January 26, 2015, and $50 on March 18, 2015. **[Exhibit M].**

91.    Rushmore assessed multiple "miscellaneous foreclosure and bankruptcy expenses to my clients' account, including $176.00 on June 1, 2015, $25.00 on January 26, 2015. **[Exhibit M].**

92.    Rushmore assessed multiple unexplained "property preservation" charges   for $11.50 apiece, on the following dates: December 19, 2014, January 9, 2015, January 30, 2015, February 27, 2015, April 23, 2015, June 1, 2015, June 26, 2015, July 23, 2015, July 27, 2015, August 27, 2015, September 22, 2015, November 3, 2015, November 30, 2015, December 30, 2015, January 28, 2016, March 25, 2016, and for $115.00 on January 6, 2016.  **[Exhibit M].**

93.    On July 14, 2016, Rushmore admitted that it was the servicer of the Loan for the "owner of the Loan" said to be WILMINGTON SAVINGS FUND SOCIETY doing business as CHRISTIANA TRUST, not in its individual capacity but solely as Trustee for BCAT 2014-9TT."  **[Exhibit C].**

94.    However, **Rushmore proclaimed it could only "attest to actions that occurred during the time frame it was servicing the loan**. The servicing responsibilities of the loan transferred from Bank of America, N.A. to Rushmore effective November 1, 2014."  **[Exhibit C** (emphasis added)**]**

95.    Rushmore stated "**Bank of America did not process the loan modification until May 10, 2011.**  After the modification was processed **several adjustments were made to the loan to reflect payments** being applied per the modification."  **[Exhibit C** (emphasis added)].

96.    Finally, Rushmore proclaimed "[a]s of June 2, 2016 the loan was transferred to Shellpoint." **[Exhibit C]**

97.    Further Rushmore admitted that Rushmore (allegedly on behalf of Wilmington/Christiana for the BCAT 2014-9TT) was responsible for the trustee sale, "[p]lease note that prior to the service transfer, the loan had a foreclosure sale set

for August 16, 2016." **[Exhibit C]**

98.   The Deed of Trust requires that "all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note." **[Exhibit A, ¶2].**

99.   The Deed of Trust specifies that if "more than one Periodic Payment is outstanding," the Lender must first pay the outstanding payment(s), and only if there is excess after the payments are accounted, "such excess may be applied to any late charges due."  **[Exhibit A, ¶2].**  Servicers may not credit amounts to "other fees," such as property inspection fees or foreclosure fees, unless monthly payments are current and no late fees are outstanding.

100.   BANA and Rushmore misapplied Plaintiffs' payments made during bankruptcy.  Shellpoint has ratified, adopted, and furthered these false activities by continuing the foreclosure on false terms.

101.   BANA and Rushmore breached the Deed of Trust's payment application mandates above. Shellpoint has ratified, adopted and furthered these false activities by continuing the foreclosure on false terms.

102.   BANA and Rushmore improperly put payments in suspense. Shellpoint has ratified, adopted and furthered these false activities by continuing the foreclosure on false terms.

103.   BANA and Rushmore improperly paid escrow amounts first, even where the escrow advances were unwarranted and improper, such as when Plaintiffs maintained insurance on the Property yet Defendants imposed force-placed insurance and paid themselves back before applying payments to principal and interest. Shellpoint has ratified, adopted and furthered these false activities by

continuing the foreclosure on false terms.

104.   BANA and Rushmore improperly charged late fees, and pyramided fees, based on their own negligent servicing. Shellpoint has ratified, adopted and furthered these false activities by continuing the foreclosure on false terms.

105.   BANA and Rushmore improperly charged excessive and unnecessary drive by inspection fees, even though the bankruptcy court had records that the Property was still occupied by Plaintiffs and in good condition.

106.   The transfer of loan servicing from BANA to Rushmore, and from Rushmore to Shellpoint resulted in unexplained sums being added to Plaintiffs' loan.

### Chain of Custody and Ownership of Note

107.   Plaintiffs' Note stated that: (a) "Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder;'" (b) if the borrower is in default, "the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me. . . ." (c) "[i]f the Note Holder has required me to pay immediately in full the Note Holder will have the right to be paid back by me. . . " (d) "[i]n addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the 'Security Instrument') protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note."

108.   Thus, the four corners of the Note define Note Holder as someone who both (a) takes this Note by transfer AND (b) who is entitled to receive payments under this Note.

109.   The last purported "copy" of the Note produced is challenged as to its authenticity as the "original" and it bore a stamped endorsement by "Laurie

Meder," a known robo-signer from nationwide court cases.

110.    Shellpoint is not the Note Holder, does not have possession of the Note endorsed to it, and is not entitled to receive payments under the Note.

111.    Rushmore is not the Note Holder, does not have possession of the Note endorsed to it, and is not entitled to receive payments under the Note.

112.    WILMINGTON SAVINGS FUND SOCIETY doing business as CHRISTIANA TRUST, not in its individual capacity but solely as Trustee for BCAT 2014-9TT does not have possession of the Note endorsed to it, and is not entitled to receive payments under the Note.

113.    BANA is not the Note Holder, and does not have possession of the Note endorsed to it and the right to receive payments under the Note.

114.    No Defendant is the Note Holder of the Note.

115.    No Defendant is the Lender or Successor Lender of the Deed of Trust.

<u>**COUNT ONE**</u>
**FALSE RECORDINGS**
**VIOLATIONS OF A.R.S. §§33-420(A)-(D)**
**(BANA, Rushmore, Wilmington/Christiana as Trustee for BCAT 2014-9TT)**

116.    The Plaintiff re-alleges and incorporates herein by reference all preceding paragraphs as though fully set forth herein.

117.    Arizona Revised Statute §33-420(A) prohibits the recording of a document that is "**forged, groundless**, contains a material misstatement **or false claim or is otherwise invalid**." Five types of documents are prohibited (1) forged documents; (2) groundless documents; (3) documents containing a material misstatement; (3) documents containing a false claim; (5) documents that are otherwise invalid.

118.    Plaintiffs have title to the real Property via a valid, recorded 2001

Warranty Deed against which Defendants recorded false documents.

119.    Plaintiffs' title is superior to all others by virtue of the Warranty Deed, and the invalidity of any party's authority under the Deed of Trust.

120.    A Deed of Trust dated December 26, 2007, was recorded in the office of the Pinal County Recorder on December 31, 2007 as #2007-141215 (the "Deed of Trust"). **[Exhibit A]**.

121.    Arizona's trustee sale procedure is a statutory scheme, that can be buttressed by the terms of the contractual Deed of Trust, but not limited.   In Arizona's non-judicial foreclosure statute, there are more than *thirteen* requirements[1] that either mandate or reference a duty to record documents. Such a duty would be meaningless, and not "strict compliance" if so-called "beneficiaries" and "trustees" could simply make up the information contained in the mandatory recordings.   Thus, information required to be recorded by the trustee sale statute, A.R.S. §§33-801-820, must be accurate per the complementary statute, A.R.S. §33-420, which prohibits recording false, groundless, invalid, or misleading documents.

122.    As set forth in detail in the "Facts and General Allegations: Transfers of Deed of Trust and Recorded Documents" above, and incorporated herein, the documents described in the next paragraphs were recorded by the Defendants knowing or having reason to know that the recorded documents were forged,

---

[1] *See, e.g.* A.R.S. §33-804(C)(notice of substitution of trustee "**shall be recorded**"); A.R.S. § 33-807 (**"A.** The trustee shall give written notice of the time and place of sale legally describing the trust property to be sold by each of the following methods: 1. **Recording a notice in the office of the recorder of each county where the trust property is situated**."); A.R.S. § 33-808 ("**C.** The notice of sale shall contain: . . .5. **The names and addresses, as of the date the notice of sale is recorded, of the beneficiary and the trustee**, the name and address of the original trustor as stated in the deed of trust, the signature of the trustee and the basis for the trustee's qualification pursuant to § 33-803, subsection A, including an express statement of the paragraph under subsection A on which the qualification is based. **The address of the beneficiary shall not be in care of the trustee**. . . ."). . .

groundless, contained a material misstatement or false claim or were otherwise invalid.

123.    BANA and its agents recorded or caused to be recorded the First Assignment of May 18, 2010 ("First Assignment"), purporting to assign the interest of MERS "solely as nominee for Countrywide Bank, FSB" to BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loan Servicing, LP the "described mortgage, together with certain note(s) described."  **[Exhibit H]**

124.    But MERS had no interest in the Note and claimed no interest in the Note.  Any interest it had in the beneficial interest in the Deed of Trust was limited by the narrow scope of MERS' self-described role as "solely as nominee" of Countrywide Bank, FSB.

125.    In 2010, Countrywide Bank, FSB was not the Note Holder and not the person entitled to payments on the Note.  It is unknown what interest Countrywide Bank, FSB had in the Deed of Trust on May 18, 2010, because it is unknown where the Note was transferred.

126.    Rushmore and its agents recorded or caused to be recorded the Second Assignment recorded on April 7, 2015, "Assignor" Bank of America, N.A. Successor by Merger to BAC Home Loan Servicing, LP fka Countrywide Home Loans Servicing, L.P. by Rushmore Loan Management Services LLC, Its Appointed Attorney in Fact." purported to transfer Bank of America, N.A.'s "beneficial interest under that Deed of Trust" (outside the chain of title) in the Fogge's Deed of Trust to Wilmington Savings Fund Society, FSB, doing business as Christiana Trust, not in its individual capacity but solely as trustee for BCAT 2014-9TT Trust. Pinal County Recorder, #2015-021326.  **[Exhibit I]**

127.    Rushmore and its agents recorded or caused to be recorded the Third Assignment of April 22, 2015 recorded as #2015-025454 with the Pinal County Recorder. **[Exhibit J]**   The Third Assignment asserted that "for value received" that Bank of America, N.A. Successor by Merger to BAC Home Loans Servicing, LP

f/k/a Countrywide Home Loans Servicing, LP "hereby grants, conveys assigns to "Wilmington Savings Fund Society, FSB, doing business as Christiana Trust, not in its individual capacity but solely as trustee for BCAT 2014-9TT" "all beneficial interest under that certain Deed of Trust" "together with the note or notes therein described and secured thereby, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Mortgage including the right to have re-conveyed, in whole or in part, the real property described therein." At the top it stated it was a correction to the Second Assignment, as the word Trust was crossed out and initialed in the conveyance language.  Otherwise, it was signed by Johnny Chapa on the same day as the Second Assignment, March 12, 2015, with the same notarization, and the same squiggle signature.

128.   On April 13, 2016, Defendant Rushmore, Defendant Wilmington/Christiana, as trustee for the BCAT 2014-9TT recorded or caused to be recorded a Substitution of Trustee purporting to substitute a new trustee, Clear Recon Corp.  Pinal County Recorder, #2016-022274.  **[Exhibit K]**.  This document says it was signed by Patricia Oliver, Assistant Secretary for Wilmington Savings Fund Society, FSB, doing business as Christiana Trust, not in its individual capacity but solely as trustee for BCAT 2014-9TT by Rushmore Loan Management Services, LLC, it's [sic] Appointed [sic] Attorney in Fact.

129.   On May 12, 2016, Defendant Rushmore, Defendant Wilmington/Christiana, as trustee for the BCAT 2014-9TT through purported agent Clear Recon Corp recorded or caused to be recorded a Notice of Trustee's Sale under Deed of Trust ("NOTS").   The NOTS falsely represented that the "current beneficiary" under Plaintiffs' Deed of Trust was Wilmington Savings Fund Society, FSB, doing business as Christiana Trust, not in its individual capacity but solely as trustee for BCAT 2014-9TT. **[Exhibit F].**  It gave the "beneficiary's" address "care of" Rushmore.  It was signed by Bernis M. Gonyea of Clear Recon Corp., the "Authorized Signatory for Trustee."  It claimed that Clear Recon's address was in

Phoenix but the document was notarized in California.  It was dated May 11, 2016, and recorded as #2016-029984 with the Pinal County Recorder.  The NOTS claimed the "trust property will be sold, pursuant to the power of Sale under that certain Deed of Trust" on August 16, 2016 at 12:00 P.M. at the main entrance to the Pinal Superior Court Building.

130.    Defendant Shellpoint has adopted, ratified, and furthered the false recorded documents by keeping the August 16, 2016 trustee sale scheduled, and refusing to revise, correct, or otherwise redress the false documents.

131.    Plaintiffs wrote to notify Rushmore, Wilmington/Christiana for BCAT 2014-9TT, and Shellpoint to request that they remove the false foreclosure recorded documents pursuant to Ariz. Rev. Stat. §33-420.  **[Exhibit G].** None has done so.

132.    The misstatement of the identity of the beneficiary was **legally** material to the Plaintiffs because it changed their effective choices and determined their contractual counter-party. The identity of the Lender/Note Holder was crucial to understanding the legal authority of the entity to whom Plaintiffs' contractual performance ran, and who would have the ability to release the Note upon payment.

133.    Further, the counter-party's identity was material and significant to Plaintiffs because the Note's performance obligations do not run to the world at large.  Rather, the obligations run to the "Note Holder," defined as the party who has taken the Note by transfer AND who is entitled to payments on the Note.

134.    Further, Plaintiffs had performed under the Note and Deed of Trust by paying BANA and Rushmore, directly and through the Chapter 13 trustee, until Rushmore and Wilmington/Christiana for BCAT 2014-9TT wrongfully prevented Plaintiffs' performance by refusing payment.

135.    All of the performance covenants of the Deed of Trust run from Plaintiffs to the "Lender" and back.  Only the "Lender" can satisfy the conditions precedent of paragraph 22 required for selling the Property via the power of sale described in the Deed of Trust.  The Note Holder and Lender must be the same to

have a valid trustee sale.

136.   It is material to a reasonable homeowner whether their counter-party on their biggest financial investment is an entity they can trust, an entity with good modification programs, good interest rates, and a corporate priority to avoid unnecessary foreclosures.

137.   It was material to Plaintiffs that their payments were being applied to the Note by the "person entitled to enforce the Note" and the Note Holder so that they would count.

138.   It was material to Plaintiffs that they were being reviewed for a loan modification by the proper party—the Note Holder and Lender---who had authority to do so and was the only party authorized to foreclose.

139.   The First, Second and Third Assignment, the Substitution of Trustee, and the Notice of Trust Sale were each unauthorized, based on false authority, and therefore groundless, contained a material misstatement and false claim, and was otherwise invalid.  The Recorded Documents were not executed by the Lender and Note Holder, a true "beneficiary" as contemplated by ARS §33-801(1) and Arizona case law.  The First SOT was not authorized under the non-judicial foreclosure statute or the Deed of Trust itself, and it gave false information about who the beneficiary was.  In addition, it failed to legally appoint a Trustee because only the Lender/Beneficiary can legally substitute a Trustee under a Deed of Trust.  Arizona law specifies that the "beneficiary" may substitute the trustee under a Deed of Trust.  A.R.S. §33-804 (acknowledged by "all beneficiaries").  Also, the Plaintiffs' Deed of Trust only allows a "Lender" to substitute a trustee. **[Exhibit A, ¶24].**

140.   MERS, BANA, Wilmington/Christiana as Trustee for BCAT Trust 14-9TT, Rushmore, nor Shellpoint was ever the Lender or "person for whose benefit the trust deed is given."

141.   No Lender met the conditions precedent of paragraph 22 for holding a trustee sale under the Deed of Trust. **[Exhibit A, ¶22].**

142.    The Notice of Trustee Sale must name the beneficiary (person for whose benefit the trust deed is given" and the "address of the beneficiary shall not be in care of the trustee." A.R.S. §33-808(C)(5).

143.    The true beneficiary must be the Lender; "the person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or the person's successor in interest." A.R.S. § 33-801(1).

144.    An alleged copy of the Note was produced by BANA and Rushmore to the bankruptcy court in a Proof of Claim.  These copies of the Note proffered by Defendants had a stamped indorsement by a known robo-signer Laurie Meder, with no date, and no allegations that the person making the Proof of Claim was the Note Holder and how it became the Note Holder.

145.    In short, Wilmington Savings Fund Society, FSB d/b/a Christiana Trust, not in its individual capacity but solely as legal title Trustee for BCAT 2014-9TT was not and is not the Note Holder.  Wilmington/Christiana as Trustee for BCAT 2014-9TT did not take the Note by transfer and was not entitled to payments thereon.  Wilmington/Christiana as Trustee for BCAT 2014-9TT was not the Lender under the Deed of Trust.  Wilmington/Christiana as Trustee for BCAT 2014-9TT was not the party for whose benefit the trust deed was given, thus, not the beneficiary of the Deed of Trust.

146.    It is material to the Plaintiffs that unauthorized parties are purporting to sell their Property at a trustee sale when Clear Recon Corp. is not an authorized trustee and neither Rushmore nor Shellpoint is an authorized beneficiary under A.R.S. §33-801(1), the Note Holder as defined by the Note or the U.C.C. (if the Note is negotiable and subject to the U.C.C.) or the successor Lender as defined in the Deed of Trust.

147.    Identification of a false beneficiary deprived Plaintiffs of their effective choices.  They could not negotiate with a false beneficiary.  They could not make payments that would be credited to a true beneficiary if Defendants were lying

about the beneficiary's identity.  Plaintiffs could not resolve their dispute via modification, short sale, foreclosure, refinance, or make any arrangements to save their home without access to the real beneficiary, Lender, and Note Holder.

148.   A completed trustee's sale would deprive Plaintiffs of their unique real Property, without authority.

149.   A completed trustee's sale would deprive Plaintiffs of due process as to certain claims and defenses to the trustee's sale. A.R.S. §33-811(c).

150.   The noticed trustee sale is reported negatively on Plaintiff's credit.

151.   The noticed trustee sale has decreased Plaintiffs' property value, and deprived them of a fair sales price should they exercise their right to sell the property.

152.   The clouded title resulting from the noticed trustee sale obstructs Plaintiff's choices regarding whether to sell, refinance, lease, pledge, gift, devise, borrow against or otherwise deal with the real Property.

153.   The statutory authority of a "power of sale" derives only where there is a deed of trust ("trust deed" under the statute) providing a source of the authority. Each provision of the statute presupposes and requires a valid deed of trust.  *See, e.g.*, Ariz. Rev. Stat. §33-807(A)("a power of sale is conferred upon the trustee of a trust deed under which the trust property may be sold, in the manner provided in this chapter, <u>after a breach or default </u>in performance of the contract or contracts, for which the trust property is conveyed as security, or a breach or default of the trust deed.").

154.   Plaintiffs notified Rushmore, Wilmington/Christiana as Trustee for BCAT 2014-9TT, and Shellpoint in writing of the invalidity of the recorded documents.  **[Exhibit G].**

155.   Plaintiffs requested that these Defendants record a Cancellation of Sale, to correct the documents, or at least to postpone the sale and investigate these matters.  **[Exhibit G].**

156.    Plaintiffs requested postponement of the sale noticed for August 16, 2016 by the defective Notice of Trustee Sale. **[Exhibit G].**

157.    Clear Recon Corp is not the valid trustee of the Deed of Trust because there was no legally valid appointment via a proper substitution by a beneficiary (ARS §33-801(1) and §33-804) and/or Lender (Deed of Trust, ¶24) to the Deed of Trust.

158.    Defendants knew or had reason to know that the Recorded Documents were forged, groundless, contained material misstatements or false claims or were otherwise invalid.

159.    Moreover, Plaintiffs notified Defendants of these deficiencies in writing. **[Exhibit G].**

160.    Defendants Rushmore, Wilmington/Christiana as Trustee for BCAT 2014-9TT and Shellpoint have "willfully refused to release or correct such document of record within twenty days from the date of a written request from the owner or beneficial title holder of the real property."   A.R.S. §33-420(C).

161.    As a result, Defendants are each liable for each document they caused to be recorded that violated the statute for "the sum of not less than five thousand dollars, or for treble the actual damages caused by the recording, whichever is greater, and reasonable attorney fees and costs of the action."  A.R.S. §33-420(A)-(B).

162.    Moreover, each person named in each Recorded Document is liable to Plaintiffs for the sum of not less than one thousand dollars, or for treble actual damages, whichever is greater, and reasonable attorney fees and costs as provided in this section," because Defendants has willfully refused to release or correct such documents within twenty days from the date of Plaintiffs' written request.  A.R.S. §33-420(C).

163.    Plaintiffs are also entitled to the rescission or removal of all documents that violate A.R.S. §33-420.  Such documents are "presumed to be groundless and invalid" pursuant to A.R.S. §33-420(D).

**COUNT TWO**
**BREACH OF CONTRACT**
**Breached by Misapplication of Payments, Unauthorized Charges,**
**Inaccurate Escrow Accounting**
**(BANA, Rushmore, Shellpoint)**

164.   Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs as though fully set forth herein.

165.   The Deed of Trust is a contract.

166.   Plaintiffs are parties to the Deed of Trust as the trustors. **[Exhibit A].**

167.   BAC, then BANA, then Rushmore, and now Shellpoint have each purported to be the servicer of Plaintiffs' loan, as that loan is represented by the Note and Deed of Trust.

168.   In BANA's Proof of Claim (POC 13) and in Rushmore's Proof of Claim allegedly filed on behalf of Wilmington Savings Fund Society, FSB d/b/a Christiana Trust, not in its individual capacity but solely as legal title Trustee for BCAT 2014-9TT, and in Rushmore's Motion for Relief from Stay, allegedly filed on behalf of Wilmington Savings Fund Society, FSB d/b/a Christiana Trust, not in its individual capacity but solely as legal title Trustee for BCAT 2014-9TT, these Defendants misrepresented their legal authority, amounts due from Plaintiffs, and falsely told the court, the Plaintiffs and the tribunal that they were Plaintiffs' actual creditors, rather than disclosing their agency, as   servicers for the Note Holder and Lender/Beneficiary under the Deed of Trust.

169.   The Deed of Trust mandates that Plaintiffs' payments be applied in a specific way: The Deed of Trust requires that "all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal

balance of the Note." [**Exhibit A**, Uniform Covenants, ¶2]

170.    The Deed of Trust specifies that if "more than one Periodic Payment is outstanding," the Lender must first pay the outstanding payment(s), and only if there is excess after the payments are accounted, "such excess may be applied to any late charges due." [**Exhibit A**, Uniform Covenants, ¶2]

171.    Servicers may not credit amounts to "other fees," such as property inspection fees or foreclosure fees, unless monthly payments are current and no late fees are outstanding.

172.    Plaintiffs continued to pay their mortgage throughout the First Bankruptcy, as well as the others that followed.  The Trustee's Final Report for *In re Fogge*, No. 10-10805-PL-BMW (Bankr. D. Ariz.)(Doc. 106)(filed July 28, 2015) corroborates that the trustee reported payments by Plaintiffs $47,441.27 that were disbursed to Creditors.  The only "Secured Creditors" were named for their "Mortgage" and their "Vehicle." Plaintiffs' bankruptcy attorneys and BAC/BANA then Rushmore told them to pay initial payments through the court in an amount exceeding $18,538.81, but did not credit these amounts to the mortgage loan, through no fault of Plaintiffs.

173.    The Deed of Trust requires that "all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note." **[Exhibit A, ¶2].**

174.    The Deed of Trust specifies that if "more than one Periodic Payment is outstanding," the Lender must first pay the outstanding payment(s), and only if there is excess after the payments are accounted, "such excess may be applied to any late charges due."  **[Exhibit A, ¶2]** Servicers may not credit amounts to "other

fees," such as property inspection fees or foreclosure fees, unless monthly payments are current and no late fees are outstanding.

175. BANA, and Rushmore misapplied Plaintiffs' payments made during bankruptcy, against the clear terms of the Deed of Trust, the TPP, the HAMP Mod, and applicable law, then refused to rectify the errors.

176. BANA, and Rushmore improperly put payments in suspense.

177. BANA, and Rushmore improperly paid their own claimed "advances" first, before applying Plaintiffs' bankruptcy payments in the order specified by the Deed of Trust.

178. BANA, and Rushmore charged unwarranted and excessive arrearages to Plaintiffs during bankruptcy, even where they were paying as agreed.

179. According to Rushmore, BANA waited a full year before honoring the executed HAMP Mod, causing significant damages and amounts to be added to the purported "balance due," in breach of the DOT, TPP, HAMP Mod, and the implied covenant of good faith and fair dealing.  **[Exhibit C]**

180. Further, Rushmore and Shellpoint have ratified, adopted and furthered these errors by refusing to rectify them, and basing a trustee's sale on false information.

181. BANA and Rushmore improperly paid escrow amounts first, even where the escrow advances were unwarranted and improper, such as when Plaintiffs maintained insurance on the Property yet Defendants imposed force-placed insurance and paid themselves back before applying payments to principal and interest.  Shellpoint ratified these errors.

182. BANA and Rushmore improperly charged late fees, and pyramided fees, based on their own negligent servicing.  Shellpoint ratified these errors.

183. BANA and Rushmore charged unreasonable attorney fees to Plaintiffs' loan during bankruptcy. Shellpoint ratified, adopted and furthered these errors.

184. BANA and Rushmore improperly charged excessive and unnecessary drive by inspection fees, even though the bankruptcy court had records that the Property was still occupied by Plaintiffs and in good condition.

185. The transfer of loan servicing from BANA to Rushmore resulted in false, unwarranted sums being added to Plaintiffs' loan.

186. The transfer of loan servicing from Rushmore to Shellpoint resulted in false, unwarranted sums being added to Plaintiffs' loan.

187. Rushmore ratified, adopted and furthered BANA's errors, mistakes, false charges and omissions by not correcting them.

188. Shellpoint ratified, adopted and furthered BANA's, and Rushmore's errors, mistakes, false charges and omissions by not correcting them.

189. Rushmore and Shellpoint failed to use due care to reconcile the information given it from BANA to do an independent investigation to make sure that the information boarded was correct.

190. Rushmore has dunned Plaintiffs numerous times for payments not owed.

191. A partial payment history provided previously to Plaintiffs, shows that payments were made to BANA and Rushmore throughout the history of the loan, and that each improperly assessed late fees, misapplied payments in contravention of the order mandated by the Deed of Trust, and otherwise mishandled the loan.

192. Further, BANA and Rushmore prevented performance by rejecting Plaintiffs' payments, putting their payments in suspense, and refusing payments, and cannot be heard to complain of breach or tender where their own activities prevented performance.

193. Plaintiffs have been damaged by these breaches through the assessment of false charges, the implementation of trustee sale, the loss of property value due to the trustee sale being noticed on false claims of default, and by having

to mitigate their damages by hiring an attorney to seek a court order stopping the trustee sale so they can pursue their claims for these substantial errors.   Also, Defendants have damaged and decreased the Property value by noticing the trustee sale based on the false charges.

## COUNT THREE
### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
### (BANA, Wilmington/Christiana as Trustee for BCAT 2014-9TT, Rushmore, Shellpoint)

194.    Plaintiffs repeat and re-allege every allegation above as if fully set forth herein.

195.    All Defendants are obligated under the Note and Deed of Trust, the Assignments, the Substitutions of Trustee, the NOTS, and the common law, to act in good faith and to deal fairly with Plaintiffs.

196.    The purpose of this covenant is to guarantee that the parties remain faithful to the intended and agreed-upon expectations of the parties in their performance.

197.    The duty of good faith extends beyond the written words of the contracts.

198.    When a party or parties to a contract manipulate bargaining power to its/their own advantage, injuring the other party, the party/parties with bargaining power breach its/their duty of good faith.

199.    Plaintiffs reasonably expected that the entities which would seek to enforce the Loan would be those legally entitled to do so.

200.    Plaintiffs reasonably expected that the entities with standing to enforce the Loan or those who appeared and claimed that entitlement, would use good faith and deal fairly in initiating and proceeding with foreclosure.

201.   Plaintiffs reasonably expected that entities acting as agents for parties under the Note and Deed of Trust would tell the truth to Plaintiffs and the bankruptcy court, would rectify errors promptly, properly apply their payments to the loan, not send their payments back, not claim false charges and amounts due, and follow all conditions precedent before attempting to invoke a power of sale.

202.   Defendants and/or their agents breached their duty of good faith and fair dealing by, without limitation, acting as described in the paragraphs below.

203.   BANA failed to honor the HAMP Mod after Plaintiffs fulfilled their obligations under the TPP and executed the HAMP Mod and paid thereunder, from April 1, 2010 until May 10, 2011.  Rushmore and Shellpoint ratified, adopted and furthered this breach.

204.   BANA, Rushmore, Wilmington/Christiana as Trustee for BCAT 2014-9TT affirmatively misrepresented to the bankruptcy court, and to Plaintiffs the true beneficiary/Lender/Note Holder through Proofs of Claim, motions for relief from stay, dunning letters, refusal to count monies paid, and finally, initiated or allowed the initiation of foreclosure without having a writing from the Lender declaring a default and electing to foreclose and without confirming that the Lender had sent Plaintiffs the required 30-day notice of default; by allowing parties not the Lender, to masquerade as the party entitled to declare default, accelerate the balance, and instruct a false trustee, Clear Recon Corp to foreclose.  Shellpoint has ratified, adopted and furthered these actions by refusing to cancel or postpone the trustee's sale or otherwise rectify the defects of which it has written notice.

205.   BANA, Rushmore, Wilmington/Christiana as Trustee for BCAT 2014-9TT hid the identity of the true Note Holder/Lender by affirmatively misrepresenting the "owner" of the Loan as MERS for Countrywide, then BAC, then Rushmore as "attorney-in-fact" for Wilmington/Christiana as Trustee for BCAT 2014-9TT.

206.    BANA, Rushmore, Wilmington/Christiana as Trustee for BCAT 2014-9TT refused payments and prevented Plaintiffs from performing by refusal.

207.    BANA refused the Chapter 13 Trustee's payment of $4,694.23 made by the Plaintiffs via the Trustee to BANA on March 1, 2013 by returning it on March 28, 2013.  BANA, Rushmore, Wilmington/Christiana as Trustee for BCAT 2014-9TT, and Shellpoint have failed and refused to credit payments.

208.    BANA, Rushmore, Wilmington/Christiana as Trustee for BCAT 2014-9TT, and Shellpoint have failed and refused to credit six months' payments made by the Plaintiffs within the Chapter 13 bankruptcy, in an amount exceeding $18,000.00.

209.    BANA, Rushmore, and Wilmington/Christiana as Trustee for BCAT 2014-9TT presented misleading evidence to the bankruptcy court as to the identity of the "creditor" and/or the amount owed.

210.    Each Defendant failed to comply with contractual obligations, including without limitation allowing an entity, not the Note Holder and Lender, to declare a default, to accelerate the debt, and to instruct Clear Recon Corp. to initiate a foreclosure.

211.    Rushmore, Wilmington/Christiana as Trustee for BCAT 2014-9TT and Shellpoint sought to proceed to Trustee's Sale on clearly invalid documents, as fully set forth in detail above.

212.    BANA and Rushmore, as ratified by Shellpoint, refused to accept payments and refused accurately to count payments toward principal and interest.

213.    BANA and Rushmore, as ratified by Shellpoint, misapplied payments made during bankruptcy and throughout the loan and the HAMP Mod.

214.    BANA and Rushmore, as ratified by Shellpoint, charged late fees, pyramided fees, and assessed junk fees such as multiple drive-by BPOs during bankruptcy where Defendants knew the Property was owner occupied.

215.   Rushmore, as ratified, adopted and furthered by Shellpoint, refused Plaintiffs' loan modification applications and claimed pre-textual reasons to evade CFPB protections that Plaintiffs would have otherwise been entitled to, including the rule that with Plaintiffs' submission of a completed loan modification application,  the impending sale could not occur (as long as the application was submitted more than 37 days before the sale date) until the application was either declined, or a modification which was offered to the borrower was declined or breached by the borrower. 12 C.F.R. § 1024.41(g).

216.   BANA, Rushmore, BANA, Rushmore, Wilmington/Christiana as Trustee for BCAT 2014-9TT, and ratified by Shellpoint, claimed false arrearages and unauthorized charges, exceeding $18,000.00 by the time of the filing of this lawsuit.

217.   Rushmore, Wilmington/Christiana as Trustee for BCAT 2014-9TT, and Shellpoint attempted to foreclose on the Property knowing and having reason to know that conditions precedent of the Deed of the Trust and the statute were not met but proceeding on the basis of known misrepresentations.

218.   As a result of Defendants' failure to act in good faith and with fair dealing as described within, Defendants have caused Plaintiffs concrete and particularized injury, in the form of a false default claimed by the Defendants but not asserted by the Note Holder/Lender, acceleration of the Note, initiation of foreclosure without instruction from the Note Holder/Lender, false amounts claimed due to reinstate; attorneys' fees and costs paid to stop an invalid trustee's sale sought by entities with no standing to do so and without the Defendants' having performed conditions precedent to a valid sale, losses sustained in having to post a bond, accrual of default penalties and interest, and other damages, as fully alleged above.

219.   If the Defendants have any standing to enforce the contracts as they claim they do then this claim arises out of the contracts between the parties, and

Plaintiffs are entitled to their attorney's fees and costs incurred in having to bring this claim, pursuant to the terms of the contracts as well as A.R.S. § 12−341.01.

220.    Wilmington/Christiana as Trustee for BCAT 2014-9TT, Rushmore and Shellpoint showed bad faith in each's failure to conduct a good faith investigation of the obvious Note/Deed of Trust payment errors, of which each had written notification.

221.    Rushmore's Trial Modification was a breach of the implied covenant of good faith and fair dealing in that it provided for $25,000 in payments without any fixed terms for a permanent modification.

222.    As a result of Defendants' failure to act in good faith and with fair dealing, Defendants have caused Plaintiffs concrete and particularized injury, in the form of a default claimed by the Defendants but not asserted by the Note Holder/Lender; tens of thousands of dollars of amounts falsely claimed due on the Note/Deed of Trust, acceleration of the Note; cloud on Plaintiffs' title with multiple groundless filings containing material misstatements, and false claims against their title; reduction in market value of their home; attorneys' fees and costs paid to stop an invalid trustee's sale sought by entities with no standing to do so and without the Defendants' having performed conditions precedent to a valid sale, as fully alleged above.

223.    Rushmore has a pattern and practice of these violations as evidenced by the volume of complaints against its loan servicing and loan modification practices as catalogued by the Consumer Financial Protection Bureau, one of the primary regulators of the mortgage servicing industry.

224.    In pursuing a Trustee's Sale in Violation of the terms of the Note and Deed of Trust, and applicable law as set forth above, Defendant Rushmore, Defendant Wilmington/Christiana, as Trustee for BCAT 2014-9TT, and Defendant Shellpoint have breached the implied covenant of good faith and fair dealing arising

from the Note and Deed of Trust, as well as the statutes which are a part of every contract.

225.   Rushmore, Wilmington/Christiana, as Trustee for BCAT 2014-9TT, and Shellpoint breaches of contract caused Plaintiffs damages in the form of the concrete and particularized injury of the initiation of foreclosure without performing conditions precedent to a valid sale including failing to receive a declaration of default and election to foreclose from the Lender, acceleration of the Note without authority, signing and recording of groundless, false, unauthorized and otherwise invalid Substitutions and Notices of Trustee Sale, late fees, penalties, accruing interest, trustee's fees, and other fees which would not have been incurred but for the improper initiation of foreclosure, attorney's fees, the requiring of liquidation of assets to post bond to stop an illegal trustee's sale, failed loan application attempts, and other damage.

## COUNT FOUR
### (Real Estate Settlement Procedures Act 12 U.S.C. §2605(b))
### (Rushmore, Shellpoint)

226.   Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs as though fully set forth herein.

227.   Real Estate Settlement Procedures Act ("RESPA"), subsection (b) requires that "[e]ach servicer of any federally related mortgage loan...notify the borrower in writing of any...transfer of the servicing of the loan to any other person...not more than 30 days after the...effective date of...transfer." 12 U.S.C. § 2605(b). Regulation X, RESPA's implementing regulation, reiterates that, under the statute, this means that 'each transferor servicer and transferee servicer of any mortgage servicing loan shall deliver to the borrower a written Notice of Transfer when servicing changes. 24 C.F.R. §3500.11.

228.   Defendants Rushmore and Shellpoint failed to deliver a Notice of Transfer of Servicing to Plaintiffs within the specifications of 12 U.S.C. §2605(b).

229.    Because Plaintiffs were facing a wrongful trustee sale scheduled for August 16, 2016, this failure was particularly egregious, as it deprived them of a party to communicate with regarding cancellation or postponement of the sale.

230.    In addition, Defendant Rushmore and Shellpoint have violated RESPA by noticing a foreclosure sale despite Plaintiffs' submission of a full loss mitigation package, and despite time still remaining to appeal Rushmore's decision, which was still in process when Rushmore caused the sale to be noticed, without authority.

231.    12 C.F.R. §1024.41(g) provides that "[i]f a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless [certain conditions not present are satisfied]."

232.    On July 14, 2015, Plaintiffs wrote to Rushmore to notify them of the discrepancies and included proof of payments and the HAMP TPP and HAMP Mod. This was a Notice of Error pursuant to the Real Estate Settlement Procedures Act.

233.    Rushmore was required to comply but failed to comply with the requirements of Reg. X, 12 C.F.R. §1024.35 regarding these errors, including failure to apply a payment, failure to accept a payment, imposing a fee or charge with no reasonable basis for imposing, failing to accurately and timely transfer information from transferor servicer to transferee, conducting foreclosure in violation of 1024.41.(g) or (j); failing to provide an accurate payoff balance, failing to promptly credit a borrower's payment as of the date of receipt in violation of 12  C.F.R. 1026.36.(c)(1), and "any other error relating to the servicing of borrower's mortgage loan." Reg. X, 12 C.F.R. § 1024.35(b).

234.    The "accurate and timely transfer of information on a borrower's mortgage account" is a "standard servicer duty." *See* Consumer Financial Protection

Bureau, Section-by-Section Analysis, 12 C.F.R. §1024.35(b)(7), 78 Fed. Reg. 10, 742 (Feb. 14, 2013).

235.    On November 6, 2015, Rushmore responded and agreed to credit one payment that BANA had misapplied but not the thousands of dollars of payments the bankruptcy debtors/Plaintiffs had painstakingly made on April 2011, May 2011, June 2011, July 2011, August 2011, and September 2011 because "the trustee did not forward the funds to Bank of America."

236.    A review of Rushmore's Payment History and Rushmore's and BAC and BANA's Proofs of Claim revealed that each has regularly and consistently tacked illicit charges to Plaintiffs' loan, in amounts exceeding $10,000.00.   Each alleged servicer ratified and adopted the illicit fees charged.

237.    These improperly assessed charges included multiple charges for "title costs," "recording fees," "advertising fees," "attorney fees," "mailing fees," "postponement costs," and "property inspections."

238.    Plaintiffs sent a Notice of Error under the Real Estate Settlement Procedures Act on February 12, 2016.  **[Exhibit E].**

239.    On or about March 30, 2016, Rushmore sent a deficient response. **[Exhibit M].**

240.    As noted by Plaintiffs in their May 10, 2016 letter regarding the March 30, 2016 Response, Rushmore "failed to produce evidence corroborating that the Fogge Note/Deed of Trust legally transferred to BCAT 2014-9TT Trust.  You failed to produce the servicing agreement between Rushmore and BCAT 2014-9TT, or any other evidence regarding Rushmore's agency relationship with any principal with ownership rights in the Fogge Loan, or the extent of the authority bestowed on Rushmore by a disclosed principal." **[Exhibit M].**

241.    Further Rushmore "failed to provide an explanation for the copy of the Note filed with the bankruptcy court that included a stamped 'endorsement' by a known robo-signer employed by ReconTrust, not Countrywide Bank, F.S.B., the

deed of trust trustee entity affiliated with Bank of America, N.A. As previously noted in the February 12, 2016 Notice of Error and QWR. *See, e.g.* purported copy of Note bearing endorsement in blank by Laurie Meder stamp, a known robo-signer who worked for ReconTrust. *In re Fogge*, No. 10-10805-PL-BMW (Bankr. D. Ariz.) (Doc. 86-1). Compare (Claim 13-1 Part 2). **[Exhibit M].**

242.    Rushmore violated the Real Estate Settlement Procedures Act (RESPA) which provides an express private right of action. 12 U.S.C. §2605(f).

243.    Rushmore violated RESPA, 12 U.S.C. § 2605(e)(1)(A), by failing to provide a written response acknowledging receipt of the Plaintiff's qualified written request no later 5 days (excluding holidays, Saturdays and Sundays) after receipt of the request.

244.    Rushmore and Shellpoint violated RESPA, 12 U.S.C. § 2605(e)(2)(A), by failing to make appropriate corrections to the Plaintiff's account in response to the qualified written request, including the crediting of any late charges or penalties, and failing to transmit written notice of such corrections to the Plaintiff no later than 30 days after receipt of the Plaintiff's qualified written request.

245.    Rushmore and Shellpoint violated RESPA, 12 U.S.C. § 2605(e)(2)(C) by failing to provide the Plaintiffs with the information and documentation requested, or an explanation why the information sought was unavailable, no later than 30 days after receipt of the Plaintiff's qualified written request.

246.    Rushmore and Shellpoint violated RESPA, 12 U.S.C. § 2605(e)(2) by refusing to cease its collection efforts and foreclosure proceedings after receiving the Plaintiff's qualified written request.

247.    Rushmore and Shellpoint violated RESPA, 12 U.S.C. §2605(e)(3), by providing information to consumer reporting agencies regarding overdue payments allegedly owed by the Plaintiffs that were related to their qualified written request.

248.    Rushmore and Shellpoint have engaged in a pattern or practice of non-

compliance with the requirements of the mortgage servicer provisions of RESPA as set forth in 12 U.S.C. § 2605. Rushmore's pattern and practice and the intentional nature of its violations were detailed above.

249.   As a direct result of Rushmore's and Shellpoint's RESPA violations, Plaintiffs suffered actual damages including postage fees, time spent and expenses incurred in obtaining compliance, missed work, transportation costs, and inconvenience.   Plaintiffs were damaged by additional interest, late fees, and foreclosure costs. Plaintiffs were damaged by improper amounts being added to their loan, including being charged for Rushmore's attorney fees for the bankruptcy, recording fees, excessive BPOs by drive-by that were not necessary or authorized and that may not have even occurred, and other improper fees, charges, and placement of their money in suspense accounts without their knowledge, or earning interest. Plaintiffs were damaged by having to hire an attorney to fight the improper charges, having to go to the bank to seek statements to fight the improper charges, having to spend time, money, and effort to lodge complaints with the CFPB, and to respond to Rushmore's frequent requests for documentation that Plaintiffs had already furnished.

250.   Plaintiffs have suffered concrete and particularized harm from Defendants' violations of RESPA, including anxiety, stress, anger, humiliation, shame, and disruption of their work and family lives.

251.   Further Plaintiffs have suffered credit damage, imminent sale of their residence, without right, and the attempted extortion of money not due.

252.   As a result, Plaintiffs suffered actual damages, statutory damages, costs and reasonable attorney fees.

253.   As a result of facing the stress of this continuous unwarranted trustee sale, Plaintiffs have suffered actual damages under RESPA, including emotional distress manifesting as anxiety, insomnia, headaches, and other manifestations.

## COUNT FIVE

## FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

## 15 U.S.C. §1692

## (Rushmore and Shellpoint)

254.   Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs as though fully set forth herein.

255.   Defendants Rushmore and Shellpoint engaged in the collection of debts from consumers using the mail or telephone.  Rushmore and Shellpoint regularly attempt to collect consumer debts alleged to be due to another, thus Rushmore and Shellpoint are each a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

256.   Rushmore and Shellpoint "'regularly collec[ted] or attemp[ted] to collect, directly or indirectly,[consumer] debts owed or due or asserted to be owed or due another' in this case." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948-49 (9th Cir. 2011).

257.   Rushmore and Shellpoint obtained the servicing rights of this debt after it was alleged to be in default, and/or treated as though it were in default, although it should not have been. 15 U.S.C. §1692a(6)(F)(ii).

258.   Plaintiffs successfully completed their Chapter 13 bankruptcy and received a discharge.  Plaintiffs completed all of their payments to BAC for BANA, then Rushmore, except when Rushmore thwarted performance by refusing payment.

259.   Hence, Plaintiffs were shocked to receive a letter where Rushmore threatened to foreclose.  **[Exhibit N]**

260.   On July 14, 2015, Plaintiffs wrote to Rushmore to notify them of the discrepancies and included proof of payments and the HAMP TPP and HAMP Mod.  **[Exhibit N]**

261.   On November 6, 2015, Rushmore responded and agreed to credit **one payment** that BANA had misapplied but not the thousands of dollars of payments the bankruptcy debtors/Plaintiffs had painstakingly made on April 2011, May 2011, June 2011, July 2011, August 2011, and September 2011 because "the trustee did not forward the funds to Bank of America." **[Exhibit N]**

262.   A review of Rushmore's Payment History and Rushmore's and BAC and BANA's Proofs of Claim revealed that each has regularly and consistently tacked illicit charges to Plaintiffs' loan, in amounts exceeding $10,000.00.   Each alleged servicer ratified and adopted the illicit fees charged.

263.   These improperly assessed charges included multiple charges for "title costs," "recording fees," "advertising fees," "attorney fees," "mailing fees," "postponement costs," and "property inspections."

264.   Plaintiffs sent a Notice of Error under the Real Estate Settlement Procedures Act on February 12, 2016.  **[Exhibit E].**

265.   On or about March 30, 2016, Rushmore sent a deficient response. **[Exhibit M].**

266.   As noted by Plaintiffs in their May 10, 2016 letter regarding the March 30, 2016 Response, Rushmore "failed to produce evidence corroborating that the Fogge Note/Deed of Trust legally transferred to BCAT 2014-9TT Trust.  You failed to produce the servicing agreement between Rushmore and BCAT 2014-9TT, or any other evidence regarding Rushmore's agency relationship with any principal with ownership rights in the Fogge Loan, or the extent of the authority bestowed on Rushmore by a disclosed principal." **[Exhibit M]**

267.   Further Rushmore "failed to provide an explanation for the copy of the Note filed with the bankruptcy court that included a stamped 'endorsement' by a nationally known robo-signed, whose stamped endorsement has appeared in litigation nationwide.

268.   Rushmore failed to substantiate the figure specified in its proposed modification of $65,000.00 in unpaid monthly payments.

269.   Rushmore's Customer Account Activity Statement ("CAAS") and Christiana Trust's and Bank of America's Proofs of Claim revealed that Rushmore and BANA regularly and consistently tacked illicit charges to Plaintiffs' loan, in violation of the express terms of the contractual Note and Deed of Trust, and federal law.  Plaintiffs gave Rushmore an opportunity to explain but it failed to do so.

270.   For example, the CAAS shows excessive late charges in the amount of $101.54/each assessed on multiple occasions, including July 16, 2015, August 17, 2015, September 16, 2015, October 16, 2015, and December 16, 2015.  Further, there were multiple "attorney advances" assessed during and after the bankruptcy without explanation or contractual basis, including $405 on February 1, 2016, $850 on June 1, 2015, $75.00 on January 26, 2015, and $50 on March 18, 2015.

271.   Rushmore assessed multiple "miscellaneous foreclosure and bankruptcy expenses to my clients' account, including $176.00 on June 1, 2015, $25.00 on January 26, 2015.

272.   Rushmore assessed multiple unexplained "property preservation" charges  for $11.50 apiece, on the following dates: December 19, 2014, January 9, 2015, January 30, 2015, February 27, 2015, April 23, 2015, June 1, 2015, June 26, 2015, July 23, 2015, July 27, 2015, August 27, 2015, September 22, 2015, November 3, 2015, November 30, 2015, December 30, 2015, January 28, 2016, March 25, 2016, and for $115.00 on January 6, 2016.

273.   On July 14, 2016, Rushmore admitted that it had only been the servicer of the Loan for the purported "owner of the Loan" said to be WILMINGTON SAVINGS FUND SOCIETY doing business as CHRISTIANA TRUST, not in its individual capacity but solely as Trustee for BCAT 2014-9TT." **[Exhibit C]**

274.   However, Rushmore proclaimed it could only "attest to actions that occurred during the time frame it was servicing the loan. The servicing

responsibilities of the loan transferred from Bank of America, N.A. to Rushmore effective November 1, 2014." **[Exhibit C].**

275.   Rushmore stated "**Bank of America did not process the loan modification until May 10, 2011.**  After the modification was processed **several adjustments were made to the loan to reflect payments** being applied per the modification." **[Exhibit C]**

276.   Finally, Rushmore proclaimed "[a]s of June 2, 2016 the loan was transferred to Shellpoint." **[Exhibit C].**

277.   Further Rushmore admitted that it was responsible for the foreclosure sale, "[p]lease note that prior to the service transfer, the loan had a foreclosure sale set for August 16, 2016." **[Exhibit C].**

278.   Shellpoint has not postponed the foreclosure sale date or otherwise rectified the errors despite written notification from Plaintiffs. **[Exhibit G].**

279.   Shellpoint took over the servicing after the loan was claimed to be in default and is also a debt collector.

280.   Shellpoint sent a statement directly to Plaintiffs as recently as July 2016, that misrepresented the character and amount of the debt.

281.   By returning Plaintiffs' counsel's checks directly to Plaintiffs by letter dated July 8, 2016, and by not contacting Plaintiffs through counsel as directed, and by not investigating the false documents, the accounting missteps, and by not postponing the trustee sale date to investigate, Shellpoint has violated the FDCPA.

282.   Shellpoint and Rushmore have violated the FDCPA by contacting Plaintiffs directly instead of through counsel.

283.   Shellpoint and Rushmore have violated the FDCPA by sending statements to Plaintiffs that attempt to collect a debt but that misrepresent the amount and character of the debt.

284.   Rushmore and Shellpoint have failed and refused to correct the account, and refused to postpone or cancel the trustee sale.

285.    Instead, on the basis of false information, Defendant Rushmore attempted to collect amounts under the Note that were not due, assessed false charges, and took actions they were not legally authorized to take, such as attempting a trustee sale on false terms as described herein.

286.    Further, knowing of the various disputes and the false amount due, Rushmore has claimed to have sold the servicing rights to Shellpoint.

287.    Rushmore and Shellpoint have each violated the FDCPA, 15 U.S.C. § 1692f, by using unfair and unconscionable means to collect the debt owed by the Plaintiffs, including the collecting and attempting to collect of interest and other charges, fees and expenses not authorized by the Deed of Trust, Note, or HAMP Mod, or otherwise legally chargeable to the Plaintiffs, as more fully set forth above.

288.    Rushmore and Shellpoint have each violated the FDCPA, 15 U.S.C. § 1692e(2), by misrepresenting the character, amount and legal status of the Plaintiffs' debt.

289.    Rushmore and Shellpoint have each violated the FDCPA, 15 U.S.C. §§ 1692e(5)and 1692f(6), by threatening to foreclose on the Plaintiff's home even though Rushmore had no present right to possession of the property under its security agreement, and by threatening to take other action prohibited by law.

290.    Rushmore and Shellpoint have each violated the FDCPA, 15 U.S.C. § 1692g(a)(1), by failing to accurately and fully state in communications to the Plaintiff "the amount of the debt."

291.    To preserve the protections of the FDCPA, it is important to know the creditor's identity. This allows the "least sophisticated consumer" to make informed decisions and to avoid being misled.

292.    Rushmore gave Plaintiffs (and the bankruptcy court) materially false information about the identity of the creditor, falsely representing that it was Wilmington/Christiana as Trustee for BCAT 2014-9TT or Rushmore itself (POC),

showing a Note that bore one undated, stamped, robo-signed endorsement.

293.   Rushmore has a pattern and practice of violating the FDCPA. Rushmore acted intentionally and without reasonable procedures to prevent violations.  Rushmore's errors were repetitive, escalating, and not bona fide.

294.   Rushmore's pattern and practice and the intentional nature of its violations were detailed above.

295.   Defendants Rushmore's and Shellpoint's FDCPA violations have caused Plaintiffs concrete and particularized harm resulting in the imminent trustee sale of the Property—Plaintiffs' residence--- and the ransom of charging thousands of dollars of money not due to avoid the wrongful, unauthorized sale, and invading Plaintiffs' statutory FDCPA rights that create a legally protected interest to be protected from misleading debt collection communications.   These statutory harms are similar to the common law harms of invasion of privacy and misrepresentation, and are concrete harms.

296.   As a result of the FDCPA violations, defendants are liable to the plaintiffs for their actual damages as are determined by the jury, statutory damages in the amount of $1,000, and costs and reasonable attorney's fees.

297.   As a result of the acts alleged above, Plaintiffs suffered anxiety, headaches, embarrassment, and sleeplessness.  Plaintiffs were fearful when as a direct result of the trustee sale noticed on false authority and false amounts claimed due, various strangers entered their yard, drove by their house, took photographs, peered in windows, causing them to fear for their safety and security and for the safety and security of their family.

WHEREFORE, Plaintiffs request and pray for the following relief:

1.   That the court award statutory, treble actual, compensatory and consequential damages as set forth above, including, but not limited to attorney fees and costs under A.R.S. §33-420, and to all other and further relief as may be allowed

under the facts and law of this case.

2. That the court award statutory damages as permitted and applicable to the facts and law of this case.

3. That the court award punitive damages as permitted under the facts and law of this case.

4. That the court order compensatory damages, reliance damages and restitution as shown for the breaches of contract.

5. That the court order all damages allowable and shown under the causes of action in this case;

6. That the court order Defendants to remove, rescind, correct, vacate and cancel the Notice of Trustee Sale;

7. That the court restrain, enjoin, and permanently enjoin any trustee sale on the real Property arising through Recorded Documents and Deed of Trust alleged to violate law herein;

8. That the court enter any and all legal and equitable orders as are necessary or appropriate under the facts and law of this case.

9. That the court declare any offending recorded documents "groundless and invalid" pursuant to A.R.S. §33-420(D).

10. Award of Attorney's fees and costs pursuant to A.R.S. §33-420, A.R.S. §12-1102, or A.R.S. §12-341.01.

11. Pre- and post-judgment interest as allowable by law.

12. Any such further relief, in law or equity, including injunctive or other such declaratory relief, to which Plaintiffs may be entitled.

### JURY DEMAND

Plaintiffs demand a trial by jury as a matter of right.

DATED:    August 2, 2016

LAW OFFICE OF BETH K. FINDSEN, PLLC


By: /s/Beth K. Findsen
    Beth K. Findsen (#023205)
    *Attorney for Plaintiffs*